**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Maria Laura Crespo, *admission pending*
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CLAUDIO MARTINEZ, LORENZO PEREZ, and JHONNY BLANCO LIZ, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>-against-<br><br>**MPM ENTERPRISES, INC., MPM ENTERPRISES II, LLC, MPM ENTERPRISES SEVENTH, INC.,  MPM ENTERPRISES BEDFORD, INC., MPM ENTERPRISES COURT STREET, INC., MPM ENTERPRISES FLATBUSH, INC., MPM ENTERPRISES HOUSTON, INC., MARKO LALIC individually, MARTIN NUNEZ, individually, and CANDIDO P FERNANDEZ individually,**<br><br>**Defendants.** | No:<br><br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT** |

Claudio Martinez, Lorenzo Perez, and Jhonny Blanco Liz a ("Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves, and upon information and belief as to other matters, alleges as follows:

## NATURE OF THE ACTION

1.       This lawsuit seeks to recover minimum wages, overtime compensation and other damages for Plaintiffs and similarly situated manual workers, including, but not limited to, kitchen workers, stockers, porters, key holders, packaging workers, and all other similarly situated hourly

manual workers (collectively, "Hourly Manual Workers" or "Hourly Workers") who work or have worked for MPM Enterprises II, LLC, MPM Enterprises, Inc., MPM Enterprises Seventh, Inc., MPM Enterprises Bedford, Inc., MPM Enterprises Court Street, Inc., MPM Enterprises Flatbush, Inc., MPM Enterprises Houston, Inc., Marko Lalic, Martin Nunez, and Candido P Fernandez (collectively, "Union Market" or "Defendants").

2.       Owned and operated by Defendants Marko Lalic, Martin Nunez, and Candido P Fernandez, Union Market operates upscale, health-food focused grocery stores in New York, New York.

3.       Specializing in fresh, organic produce and a wide variety of prepared foods, the first Union Market location opened in 2005 in Brooklyn, New York. The brand currently operates five locations in Brooklyn and Manhattan.

4.       At all relevant times, Defendants have compensated Plaintiffs and all other Hourly Manual Workers on an hourly basis.

5.       Despite being non-exempt employees, Defendants have failed to properly pay Plaintiffs and other Hourly Manual Workers proper minimum wages and overtime compensation at 1.5 times their regular rate of pay for all hours worked when they work over 40 hours per week.

6.       In this regard, Defendants engage in the impermissible practice of time-shaving, whereby they reduce Plaintiffs hours to avoid making full payments for hours worked. Specifically, Plaintiffs report that Defendants automatically deduct 30-minute lunch breaks every shift, despite the fact that Plaintiffs are regularly unable to take such a break.  Defendants further shave time from workers' pay in order to reduce labor costs and avoid paying overtime.

7.       Further, Defendants also require Hourly Manual Workers to perform work off the clock. Specifically, Plaintiffs report that when they were scheduled to work opening shifts, they

were, at times, required to arrive and perform work as much as an hour before being able to clock in.

8.      Defendants further failed to furnish Plaintiffs and other Hourly Manual Workers with spread of hours pay, despite the fact that they regularly worked shifts over 10 hours in length.

9.      Defendants paid Hourly Manual Workers on a bi-weekly basis and thus failed to timely pay wages within seven calendar days after the end of the week in which wages were earned.

10.      Defendants failed to provide adequate wage notices and accurate wage statements to Plaintiffs and other employees.

11.      Finally, Defendants regularly posted workers' schedules with less than 72 hours before the start of the first shift on the work schedule, made unannounced and unpredictable changes to employees' schedules without adequate notice, and failed to compensate employees for these changes.

12.      Plaintiffs bring this action on behalf of themselves and all other similarly-situated Hourly Manual Workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b).

13.      Plaintiffs also bring this action on behalf of themselves and all other similarly-situated Hourly Manual Workers in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the New York Labor Law, Article 19, §§ 650 *et seq*., Article 6, §§ 190 *et seq.* ("NYLL"), the supporting New York State Department of Labor Regulations, and the New York City Fair Workweek Law, N.Y.C. Admin. Code §§ 20-1201 *et seq*. ("NYCFWL").

## THE PARTIES

**Plaintiffs**

**Claudio Martinez**

14.     Claudio Martinez ("Martinez") is an adult individual who is a resident of the State of New York.

15.     Martinez was employed by Union Market from on or about January 24, 2010 to on or about September 23, 2019. He was employed in the position of "key holder" since approximately 2012.

16.     Martinez is a covered employee within the meaning of the FLSA, the NYLL, and the NYCFWL.

17.     A written consent form for Martinez is being filed with this Class Action Complaint.

**Lorenzo Perez**

18.     Lorenzo Perez ("Perez") is an adult individual who is a resident of the State of New York.

19.     Perez has been employed by Union Market as a "produce department attendant" from in or around October 2017 until the present.

20.     Perez is a covered employee within the meaning of the FLSA, the NYLL, and the NYCFWL.

21.     A written consent form for Perez is being filed with this Class Action Complaint.

**Jhonny Blanco Liz**

22.     Jhonny Blanco Liz ("Blanco") is an adult individual who is a resident of the State of New York.

23.     Blanco was employed by Union Market as a "porter" from in or around August 2017

until the present.

24.     Blanco is a covered employee within the meaning of the FLSA, the NYLL, and the NYCFWL.

25.     A written consent form for Blanco is being filed with this Class Action Complaint.

**Defendants**

26.     Defendants jointly employed Plaintiffs and similarly-situated employees at all times relevant.

27.     Each Defendant has had substantial control over Plaintiffs and similarly-situated employees' working conditions, and over the unlawful policies and practices alleged herein.

28.     During all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA, the NYLL, and the NYCFWL.

**MPM Enterprises, Inc.**

29.     MPM Enterprises, Inc. is a domestic business corporation organized and existing under the laws of New York.

30.     MPM Enterprises, Inc. was and is a covered employer within the meaning of the FLSA, the NYLL, and the NYCFWL, and at all times relevant, employed Plaintiffs and similarly-situated employees.

31.     MPM Enterprises, Inc. has maintained control, oversight, and direction over Plaintiffs and similarly-situated employees, including timekeeping, payroll, and other employment practices that applied to them.

32.     MPM Enterprises, Inc. applies the same employment policies, practices, and procedures to all Non-Exempt Hourly Manual Workers in its operation, including policies, practices, and procedures with respect to payment of overtime compensation.

33.     Upon information and belief, at all relevant times, MPM Enterprises, Inc. has had an annual gross volume of sales in excess of $500,000.

**MPM Enterprises II, LLC**

34.     MPM Enterprises II, LLC is a domestic business corporation organized and existing under the laws of New York.

35.     MPM Enterprises II, LLC was and is a covered employer within the meaning of the FLSA, the NYLL, and the NYCFWL, and at all times relevant, employed Plaintiffs and similarly-situated employees.

36.     MPM Enterprises II, LLC has maintained control, oversight, and direction over Plaintiffs and similarly-situated employees, including timekeeping, payroll, and other employment practices that applied to them.

37.     MPM Enterprises II, LLC applies the same employment policies, practices, and procedures to all Non-Exempt Hourly Manual Workers in its operation, including policies, practices, and procedures with respect to payment of overtime compensation.

38.     Upon information and belief, at all relevant times, MPM Enterprises II, LLC, has had an annual gross volume of sales in excess of $500,000.

**MPM Enterprises Seventh, Inc.**

39.     MPM Enterprises Seventh, Inc. is a domestic business corporation organized and existing under the laws of New York.

40.     MPM Enterprises Seventh, Inc. was and is a covered employer within the meaning of the FLSA, the NYLL, and the NYCFWL, and at all times relevant, employed Plaintiffs and similarly-situated employees.

41.     MPM Enterprises Seventh, Inc. has maintained control, oversight, and direction

over Plaintiffs and similarly-situated employees, including timekeeping, payroll, and other employment practices that applied to them.

42. MPM Enterprises Seventh, Inc. applies the same employment policies, practices, and procedures to all Non-Exempt Hourly Manual Workers in its operation, including policies, practices, and procedures with respect to payment of overtime compensation.

43. Upon information and belief, at all relevant times, MPM Enterprises Seventh, Inc. has had an annual gross volume of sales in excess of $500,000.

**MPM Enterprises Bedford, Inc.**

44. MPM Enterprises Bedford, Inc. is a domestic business corporation organized and existing under the laws of New York.

45. MPM Enterprises Bedford, Inc. was and is a covered employer within the meaning of the FLSA, the NYLL, and the NYCFWL, and at all times relevant, employed Plaintiffs and similarly-situated employees.

46. MPM Enterprises Bedford, Inc. has maintained control, oversight, and direction over Plaintiffs and similarly-situated employees, including timekeeping, payroll, and other employment practices that applied to them.

47. MPM Enterprises Bedford, Inc. applies the same employment policies, practices, and procedures to all Non-Exempt Hourly Manual Workers in its operation, including policies, practices, and procedures with respect to payment of overtime compensation.

48. Upon information and belief, at all relevant times, MPM Enterprises Bedford, Inc. has had an annual gross volume of sales in excess of $500,000.

**MPM Enterprises Court Square, Inc.**

49. MPM Enterprises Court Square, Inc. is a domestic business corporation organized

and existing under the laws of New York.

50.     MPM Enterprises Court Square, Inc. was and is a covered employer within the meaning of the FLSA, the NYLL, and the NYCFWL, and at all times relevant, employed Plaintiffs and similarly-situated employees.

51.     MPM Enterprises Court Square, Inc. has maintained control, oversight, and direction over Plaintiffs and similarly-situated employees, including timekeeping, payroll, and other employment practices that applied to them.

52.     MPM Enterprises Court Square, Inc. applies the same employment policies, practices, and procedures to all Non-Exempt Hourly Manual Workers in its operation, including policies, practices, and procedures with respect to payment of overtime compensation.

53.     Upon information and belief, at all relevant times, MPM Enterprises Court Square, Inc. has had an annual gross volume of sales in excess of $500,000.

**MPM Enterprises Flatbush, Inc.**

54.     MPM Enterprises Flatbush, Inc. is a domestic business corporation organized and existing under the laws of New York.

55.     MPM Enterprises Flatbush, Inc. was and is a covered employer within the meaning of the FLSA, the NYLL, and the NYCFWL, and at all times relevant, employed Plaintiffs and similarly-situated employees.

56.     MPM Enterprises Flatbush, Inc. has maintained control, oversight, and direction over Plaintiffs and similarly-situated employees, including timekeeping, payroll, and other employment practices that applied to them.

57.     MPM Enterprises Flatbush, Inc. applies the same employment policies, practices, and procedures to all Non-Exempt Hourly Manual Workers in its operation, including policies,

practices, and procedures with respect to payment of overtime compensation.

58. Upon information and belief, at all relevant times, MPM Enterprises Flatbush, Inc. has had an annual gross volume of sales in excess of $500,000.

**MPM Enterprises Houston, Inc.**

59. MPM Enterprises Houston, Inc. is a domestic business corporation organized and existing under the laws of New York.

60. MPM Enterprises Houston, Inc. was and is a covered employer within the meaning of the FLSA, the NYLL, and the NYCFWL, and at all times relevant, employed Plaintiffs and similarly-situated employees.

61. MPM Enterprises Houston, Inc. has maintained control, oversight, and direction over Plaintiffs and similarly-situated employees, including timekeeping, payroll, and other employment practices that applied to them.

62. MPM Enterprises Houston, Inc. applies the same employment policies, practices, and procedures to all Non-Exempt Hourly Manual Workers in its operation, including policies, practices, and procedures with respect to payment of overtime compensation.

63. Upon information and belief, at all relevant times, MPM Enterprises Houston, Inc. has had an annual gross volume of sales in excess of $500,000.

**Marko Lalic**

64. At all relevant times herein, Marko Lalic ("Lalic") has owned and/or operated Union Market.

65. Upon information and belief, Lalic is a resident of the State of New York.

66. According to multiple media sources, Lalic is an owner and founder of Union

Market and makes determinations regarding the hiring and firing of employees.[1]

67.     Lalic lists himself as the co-owner of Union Market on his personal LinkedIn page.[2]

68.     Lalic is identified as the CEO of MPM Enterprises, Inc. in that entity's New York State Department of State, Division of Corporations registration.

69.     Lalic is also identified as a principal for Union Market in the New York State Liquor Licenses for MPM Enterprises, Inc., MPM Enterprises Seventh, Inc., MPM Enterprises Bedford, Inc., MPM Enterprises Court Street, Inc., MPM Enterprises Flatbush, Inc., and MPM Enterprises Houston, Inc.

70.     Furthermore, Lalic identifies himself as officer, stockholder, and President of Union Market and maintains that is involved in "managing daily operation of the business", per the Application for Alcoholic Beverage Control Retail License filed for MPM Enterprises, Inc.

71.     Lalic maintains a direct and significant management role in Union Market. In this regard, Plaintiffs identified Lalic as an owner of Union Market.

72.     At all relevant times, Lalic has had power over payroll decisions at Union Market, including the power to retain time and/or wage records.

73.     At all relevant times, Lalic has been actively involved in managing the day to day operations of Union Market.

74.     At all relevant times, Lalic has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly-situated employees at Union Market.

75.     At all relevant times, Lalic has had the power to transfer the assets and/or liabilities of Union Market.

76.     At all relevant times, Lalic has had the power the declare bankruptcy on behalf of

---

[1] *See* https://www.ediblebrooklyn.com/2018/union-market-new-york-city/.
[2] *See* https://www.linkedin.com/in/marko-lalic-1aab9419.

Union Market.

77.     At all relevant times, Lalic has had the power to enter into contracts on behalf of Union Market.

78.     At all relevant times, Lalic has had the power to close, shut down, and/or sell Union Market.

79.     Lalic is a covered employer within the meaning of the FLSA, the NYLL, and the NYCFWL and at all relevant times, he has employed and/or jointly employed Plaintiffs and similarly-situated employees.

**Martin Nunez**

80.     At all relevant times herein, Martin Nunez ("Nunez") has owned and/or operated Union Market.

81.     Upon information and belief, Nunez is a resident of the State of New York.

82.     According to multiple media sources, Nunez is an owner and founder of Union Market and makes determinations regarding the hiring and firing of employees.[3]

83.     Nunez is identified as the CEO of MPM Enterprises Seventh, Inc., MPM Enterprises Court Street, Inc., and MPM Enterprises Flatbush, Inc. in those entities' New York State Department of State, Division of Corporations registrations.

84.     Nunez is also identified as a principal for Union Market in the New York State Liquor Licenses for MPM Enterprises, Inc., MPM Enterprises Seventh, Inc., MPM Enterprises Bedford, Inc., MPM Enterprises Court Street, Inc., MPM Enterprises Flatbush, Inc., and MPM Enterprises Houston, Inc.

85.     Furthermore, Nunez identifies himself as officer, stockholder, director, and Vice

---

[3] *See* https://www.ediblebrooklyn.com/2018/union-market-new-york-city/.

President of Union Market in the Application for Alcoholic Beverage Control Retail License filed

for MPM Enterprises, Inc.

86.     Nunez maintains a direct and significant management role in Union Market. In this

regard, Plaintiffs identified Nunez as an owner of Union Market.

87.     At all relevant times, Nunez has had power over payroll decisions at Union Market,

including the power to retain time and/or wage records.

88.     At all relevant times, Nunez has been actively involved in managing the day to day

operations of Union Market.

89.     At all relevant times, Nunez has had the power to stop any illegal pay practices that

harmed Plaintiffs and similarly-situated employees at Union Market.

90.     At all relevant times, Nunez has had the power to transfer the assets and/or

liabilities of Union Market.

91.     At all relevant times, Nunez has had the power the declare bankruptcy on behalf of

Union Market.

92.     At all relevant times, Nunez has had the power to enter into contracts on behalf of

Union Market.

93.     At all relevant times, Nunez has had the power to close, shut down, and/or sell

Union Market.

94.     Nunez is a covered employer within the meaning of the FLSA, the NYLL, and the

NYCFWL and at all relevant times, he has employed and/or jointly employed Plaintiffs and

similarly-situated employees.

**Candido P. Fernandez**

95.     At all relevant times herein, Candido P. Fernandez, also known as Paul Fernandez,

("Fernandez") has owned and/or operated Union Market.

96.     Upon information and belief, Fernandez is a resident of the State of New York.

97.     According to multiple media sources, Fernandez is an owner and founder of Union Market and makes determinations regarding the hiring and firing of employees.[4]

98.     Fernandez is also identified as a principal for Union Market in the New York State Liquor Licenses for MPM Enterprises, Inc., MPM Enterprises Seventh, Inc., MPM Enterprises Bedford, Inc., MPM Enterprises Court Street, Inc., MPM Enterprises Flatbush, Inc., and MPM Enterprises Houston, Inc.

99.     Furthermore, Fernandez identifies himself as officer, stockholder, Secretary, and Treasurer of Union Market in the Application for Alcoholic Beverage Control Retail License filed for MPM Enterprises, Inc.

100.    Fernandez maintains a direct and significant management role in Union Market. In this regard, Plaintiffs identified Fernandez as an owner of Union Market.

101.    At all relevant times, Fernandez has had power over payroll decisions at Union Market, including the power to retain time and/or wage records.

102.    At all relevant times, Fernandez has been actively involved in managing the day to day operations of Union Market.

103.    At all relevant times, Fernandez has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly-situated employees at Union Market.

104.    At all relevant times, Fernandez has had the power to transfer the assets and/or liabilities of Union Market.

105.    At all relevant times, Fernandez has had the power the declare bankruptcy on behalf

---

[4] *See* https://www.ediblebrooklyn.com/2018/union-market-new-york-city/.

of Union Market.

106.    At all relevant times, Fernandez has had the power to enter into contracts on behalf of Union Market.

107.    At all relevant times, Fernandez has had the power to close, shut down, and/or sell Union Market.

108.    Fernandez is a covered employer within the meaning of the FLSA, the NYLL, and the NYCFWL and at all relevant times, he has employed and/or jointly employed Plaintiffs and similarly-situated employees.

## JURISDICTION AND VENUE

109.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, and jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

110.    This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

111.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants conduct business in this District.

## COLLECTIVE ACTION ALLEGATIONS

112.    Plaintiffs bring the First Cause of Action, an FLSA claim, on behalf of themselves and all similarly-situated persons who work or have worked as Hourly Workers for Union Market who elect to opt-in to this action (the "FLSA Collective").

113.    Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and the FLSA Collective.

114.    Consistent with Defendants' policies and patterns or practices, Plaintiffs and the

FLSA Collective were not paid the proper premium overtime compensation of 1.5 times their regular rates of pay for all hours worked beyond 40 per workweek.

115.    All of the work that Plaintiffs and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and the FLSA Collective have performed.

116.    As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective.  This policy and pattern or practice includes, but is not limited to, willfully failing to pay their employees, including Plaintiffs and the FLSA Collective, overtime wages for all hours worked in excess of 40 hours per workweek. In this regard, Defendants regularly made impermissible deductions from Plaintiffs' time, including deductions for breaks not taken and other time shaving practices.

## NEW YORK CLASS ACTION ALLEGATIONS

117.    Plaintiffs brings the Second, Third, Fourth, Fifth, Sixth, and Seventh Causes of Action, NYLL and NYCFWL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of:

> All persons who work or have worked as Hourly Manual Workers for MPM Enterprises Inc., MPM Enterprises II, LLC, MPM Enterprises Seventh, Inc., MPM Enterprises Bedford, Inc., MPM Enterprises Court Street, Inc., MPM Enterprises Flatbush, Inc., and MPM Enterprises Houston, Inc, in New York between March 20, 2014[5] and the date of final judgment in this matter (the "New York Class").

118.    The members of the New York Class are so numerous that joinder of all members

---

[5] By order of Governor Andrew Cuomo, on March 20, 2020, Executive Order 202.8 tolled all time limits for commencing or filing any legal actions. This order was subsequently extended multiple times, most recently by Executive Order 202.67, which extends the tolling through November 3, 2020.

is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

119.    There are more than fifty members of the New York Class.

120.    Plaintiffs' claims are typical of those claims that could be alleged by any member of the New York Class, and the relief sought is typical of the relief which would be sought by each member of the New York Class in separate actions.

121.    Plaintiffs and the New York Class have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected everyone in the New York Class similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each member of the New York Class.

122.    Plaintiffs are able to fairly and adequately protect the interests of the New York Class and have no interests antagonistic to the New York Class.

123.    Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiff and classes in wage and hour cases.

124.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

125.    Common questions of law and fact exist as to the New York Class that predominate

over any questions only affecting Plaintiffs and/or each member of the New York Class individually and include, but are not limited to, the following:

(a) Whether Defendants correctly compensated Plaintiffs and the New York Class with proper minimum wages for all hour worked up to 40 per workweek;

(b) whether Defendants correctly compensated Plaintiffs and the New York Class for hours worked in excess of 40 per workweek;

(c) whether Defendants correctly compensated Plaintiffs and the New York Class with spread of hours pay, as required by the NYLL

(d) whether Defendants failed to pay Plaintiffs and the New York Class timely wages by failing to pay manual workers on a weekly basis, as required by the NYLL;

(e) whether Defendants failed to furnish Plaintiff and the New York Class with proper annual wage notices, as required by the NYLL;

(f) whether Defendants failed to furnish Plaintiff and the New York Class with accurate statements with every payment of wages, as required by the NYLL; and

(g) whether Defendants failed to give adequate notice of scheduled shifts and schedule changes to Plaintiffs and the New York Class, as required by the NYCFWL.

## PLAINTIFFS' FACTUAL ALLEGATIONS

126.   Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiffs, individually, as follows:

**Claudio Martinez**

127.   Martinez was employed by Defendants as a "key holder" from on or about January 24, 2010 through on or about September 23, 2019.

128.   During his employment, Martinez worked for Defendants at Union Market

locations in Brooklyn, New York and in New York, New York.

129.    During his employment, Martinez frequently worked over 40 hours per week, to a maximum of approximately 65 hour per week. Martinez worked, on average, approximately 50 to 55 hours per week.

130.    Despite regularly clocking in and out, and working over 40 hours per workweek, Defendants failed to compensate Martinez with proper overtime compensation of 1.5 times his regular rate of pay for all hours he was suffered or permitted to work in excess of 40 hours per workweek.

131.    For example, despite regularly working over 50 hours per week, Martinez was usually paid for a maximum of 44 or 45 hours per week.

132.    In this regard, Defendants shaved Martinez' time and hours, thus impermissibly reducing his compensation for all of the hours worked over forty hour per week.

133.    Throughout his employment, Martinez frequently worked extended shifts without the opportunity to take breaks. Despite regularly working through break times, Defendants automatically deducted 30 minutes from his pay every shift.

134.    Throughout his employment, Martinez would work shifts of over ten hours from beginning to the end of his shift. Despite working shifts of over ten hours, Defendants failed to provide Martinez with spread of hours pay as required by the NYLL.

135.    Throughout his employment, Defendants paid Martinez on a biweekly basis.

136.    Throughout his employment, Defendants failed to provide Martinez with accurate wage statements with each payment of wages as required by the NYLL.

137.    Defendants failed to provide Martinez with a proper annual wage notice as required by the NYLL.

138.     Defendants failed to provide Martinez with a written work schedule no later than 72 hours before the first shift on the work schedule. In this regard, Defendants regularly posted shifts on Saturday or Sunday for shifts beginning on the Monday immediately after, thus failing to give 72 hours' notice. Further, Defendants regularly made last-minute changes to Martinez' schedule without providing 72 hours' notice of the change and without obtaining Martinez' consent in writing.

**Lorenzo Perez**

139.     Perez has been employed by Defendants as a "produce department attendant" from on or about October 2017 through the present.

140.     During his employment, Perez has worked for Defendants at Union Market locations in Brooklyn, New York.

141.     During his employment, Perez frequently worked over 40 hours per week, to a maximum of approximately 60 hour per week. Perez worked, on average, approximately 42 to 50 hours per week.

142.     Despite regularly clocking in and out, and working over 40 hours per workweek, Defendants failed to compensate Perez with proper overtime compensation of 1.5 times his regular rate of pay for all hours he was suffered or permitted to work in excess of 40 hours per workweek.

143.     In this regard, Defendants shaved Perez' time and hours, thus impermissibly reducing his compensation for all of the hours worked over forty hour per week.

144.     Throughout his employment, Perez frequently worked extended shifts without the opportunity to take breaks. Despite regularly working through break times, Defendants either automatically deducted 30 minutes from his pay every shift or required him to clock out for the break but continue to work during that time.

145.     Throughout his employment, Perez would work shifts of over ten hours from

beginning to the end of his shift. Despite working shifts of over ten hours, Defendants failed to provide Perez with spread of hours pay as required by the NYLL.

146.    Throughout his employment, Defendants paid Perez on a biweekly basis.

147.    Throughout his employment, Defendants failed to provide Perez with accurate wage statements with each payment of wages as required by the NYLL.

148.    Defendants failed to provide Perez with a proper annual wage notice as required by the NYLL.

149.    Defendants failed to provide Perez with a written work schedule no later than 72 hours before the first shift on the work schedule. In this regard, Defendants regularly posted shifts on Saturday or Sunday for shifts beginning on the Monday immediately after, thus failing to give 72 hours' notice. Further, Defendants regularly made last-minute changes to Perez' schedule without providing 72 hours' notice of the change and without obtaining Perez' consent in writing.

**Jhonny Blanco Liz**

150.    Blanco was employed by Defendants as a "porter" from on or about August 2017 through approximately November 2019.

151.    During his employment, Blanco worked for Defendants at Union Market locations in Brooklyn, New York.

152.    During his employment, Blanco frequently worked over 40 hours per week, to a maximum of approximately 55 hours per week. Blanco worked, on average, approximately 40 to 50 hours per week.

153.    Despite regularly clocking in and out, and working over 40 hours per workweek, Defendants failed to compensate Blanco with proper overtime compensation of 1.5 times his regular rate of pay for all hours he was suffered or permitted to work in excess of 40 hours per

workweek.

154.    In this regard, Defendants shaved Blanco's time and hours, thus impermissibly reducing his compensation for all of the hours worked over forty hour per week.

155.    Throughout his employment, Blanco frequently worked extended shifts without the opportunity to take breaks. Despite regularly working through break times, Defendants either automatically deducted 30 minutes from his pay every shift or required him to clock out for the break but continue to work during that time.

156.    Throughout his employment, Blanco would work shifts of over ten hours from beginning to the end of his shift. Despite working shifts of over ten hours, Defendants failed to provide Blanco with spread of hours pay as required by the NYLL.

157.    Throughout his employment, Defendants paid Blanco on a biweekly basis.

158.    Throughout his employment, Defendants failed to provide Blanco with accurate wage statements with each payment of wages as required by the NYLL.

159.    Defendants failed to provide Blanco with a proper annual wage notice as required by the NYLL.

160.    Defendants failed to provide Blanco with a written work schedule no later than 72 hours before the first shift on the work schedule. In this regard, Defendants regularly posted shifts on Saturday or Sunday for shifts beginning on the Monday immediately after, thus failing to give 72 hours' notice. Further, Defendants regularly made last-minute changes to Blanco's schedule without providing 72 hours' notice of the change and without obtaining Blanco's consent in writing.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Overtime Wages
### (Brought on behalf of Plaintiffs and the FLSA Collective)

161.    Plaintiffs reallege and incorporate by reference all allegations in all preceding

paragraphs.

162.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the members of FLSA Collective.

163.    Plaintiffs and the FLSA Collective worked in excess of 40 hours during workweeks in the relevant period.

164.    Defendants failed to pay Plaintiffs and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times their regular rate of pay for all hours worked in excess of 40 per workweek.

165.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA Collective have suffered damages by being denied overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**SECOND CAUSE OF ACTION**
**New York Labor Law – Minimum Wages**
**(Brought on behalf of Plaintiffs and the New York Class)**

166.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

167.    The minimum wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and protect Plaintiffs and the New York Class.

168.    Defendants failed to pay Plaintiffs and the New York Class proper minimum wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations for all hours worked up to 40 per workweek.

169.    Due to Defendants' violations of the NYLL, Plaintiffs and the New York Class are

entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

### THIRD CAUSE OF ACTION
**New York Labor Law – Overtime Wages**
**(Brought on behalf of Plaintiffs and the New York Class)**

170.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

171.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and protect Plaintiffs and the New York Class.

172.    Defendants failed to pay Plaintiffs and the New York Class the premium overtime wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times their regular rate of pay – for all hours worked beyond 40 per workweek.

173.    Due to Defendants' violations of the NYLL, Plaintiffs and the New York Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

### FOURTH CAUSE OF ACTION
**New York Labor Law – Spread of Hours Pay**
**(Brought on behalf of Plaintiffs and the New York Class)**

174.    Plaintiffs realleges and incorporates by reference all allegations in all preceding paragraphs.

175.    Defendants have failed to pay Plaintiffs and the New York Class compensation of one hour's pay at the basic minimum hourly wage rate for each day that the length of the interval between the beginning and end of their workday – including working time plus time off for meals

plus intervals off duty – was greater than 10 hours.

176.    Due to Defendants' violations of the NYLL, Plaintiffs and the New York Class are entitled to recover from Defendants their unpaid spread of hours wages, liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

**FIFTH CAUSE OF ACTION**
**New York Labor Law – Failure to Pay Timely Wages**
**(Brought on behalf of Plaintiffs and the New York Class)**

177.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

178.    The timely payment of wages provisions of NYLL, Article 6 § 191 and its supporting regulations apply to Defendants and protect Plaintiffs and the New York Class.

179.    Defendants failed to pay Plaintiffs and the New York Class on a timely basis as required by NYLL § 191(1)(a).

180.    Due to Defendants' violations of the NYLL, Plaintiffs and the New York Class are entitled to recover from Defendants the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

**SIXTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Proper Annual Wage Notices**
**(Brought on behalf of Plaintiffs and the New York Class)**

181.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

182.    Defendants have failed to supply Plaintiffs and the New York Class with a proper time of hire annual wage notice, as required by NYLL, Article 6, § 195(1), in English or in the language identified as their primary language, at the time of hiring, containing, among other items:

the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; overtime rate; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

183.     Due to Defendants' violations of NYLL, Article 6, § 195(1), effective February 27, 2015, Plaintiffs and the New York Class are entitled to statutory penalties of fifty dollars for each workday that Defendants failed to provide them with wage notices, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-b).

**SEVENTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Accurate Wage Statements**
**(Brought on behalf of Plaintiffs and the New York Class)**

184.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

185.     Defendants failed to supply Plaintiffs and the New York Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable;

deductions; and net wages.

186.     Due to Defendants' violations of NYLL, Article 6, § 195(3), effective February 27, 2015, Plaintiffs and the New York Class are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-d).

**EIGHTH CAUSE OF ACTION**
**New York City Fair Workweek Law – On-Call Scheduling**
**(Brought on Behalf of Plaintiffs and the New York Class)**

187.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

188.     The on-call scheduling provisions for retail workers in the NYCFWL, Subchapter 5 §§ 20-1251 *et seq.* apply to Defendants and protect Plaintiffs and the New York Class.

189.     Defendants have failed to provide 72 hours' notice of shift scheduling and schedule changes as required by the NYCFWL §§ 20-1251 and 20-1252.

190.     Due to Defendants' violations of the NYCFWL, Plaintiffs and the New York Class are entitled to recover from Defendants $500 or actual damages per violation of § 20-1251(a), $300 or actual damages per violation of § 20-1252(a)-(b), and other compensatory damages as permitted by NYCFWL § 20-1208.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually, and on behalf of all other similarly situated persons, respectfully request that this Court grant the following relief:

A.     That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all Hourly Workers who are presently, or have at any

time during the six years immediately preceding the filing of this suit[6], up through and including the date of this Court's issuance of court-supervised notice, worked for Union Market.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.      Unpaid overtime wages, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.      Designation of Plaintiffs as representatives of the NY Rule 23 Class and counsel of record as Class Counsel;

E.      Unpaid minimum and overtime wages and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

F.      Statutory penalties of five hundred dollars or actual damages for each violation of the NYCFWL § 20-1251(a);

G.      Statutory penalties of three hundred dollars or actual damages for each violation of § 20-1252(a)-(b).

H.      Statutory penalties of fifty dollars for each workday that Defendants failed to provide Plaintiffs and the NY Rule 23 Class with proper annual wage notices, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

I.      Statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiffs and the NY Rule 23 Class with accurate wage statements, or a total of

---

[6] In the period beginning March 20, 2014.

five thousand dollars each, as provided for by NYLL, Article 6 § 198;

    J.      Prejudgment and post-judgment interest;

    K.      Reasonable attorneys' fees and costs of the action; and

    L.      Such other relief as this Court shall deem just and proper.


Dated: New York, New York
       October 15, 2020



                        Respectfully submitted,



                        /s/Brian S. Schaffer
                        Brian S. Schaffer

                        **FITAPELLI & SCHAFFER, LLP**
                        Brian S. Schaffer
                        Maria Laura Crespo, *admission pending*
                        28 Liberty Street, 30th Floor
                        New York, NY 10005
                        Telephone: (212) 300-0375

                        *Attorneys for Plaintiffs and*
                        *the Putative Class*

# EXHIBIT A

## **FORMULARIO DE CONSENTIMIENTO DE UNIÓN**

1.      Doy mi consentimiento para ser parte demandante en una demanda contra UNION MARKET, MPM ENTERRISES y / o entidades e individuos relacionados con el fin de obtener reparación por violaciones de la Fair Labor Standards Act, (*Ley de las Normas Laborales Justas*) de conformidad con 29 USC § 216(b).

2.      Al firmar y devolver este formulario de consentimiento, yo designo Fitapelli & Schaffer, LLP ("La Firma") para representarme y hacer decisiones en mi defensa acerca del caso y cualquier acuerdo extrajudicial. Entiendo que costos razonables hechos en mi defensa serán deducido de cualquier acuerdo extrajudicial o juicio será prorrateado entre todos los otros demandantes. Entiendo que la firma peticionara con la Corte para conseguir los costos de abogado de cualquier acuerdo extrajudicial o juicio en la suma que será el mayor de lo siguiente: (1) la suma "lodestar", que es calculada por multiplicar una tarifa por hora razonable por los números de horas dedicado a la demanda, o (2) 1/3 del total bruto del acuerdo judicial o juicio. Estoy de acuerdo de ser vinculado a cualquier proceso legal de este asunto por la Corte, sea favorable o desfavorable.

_____
Firma (Signature)

_____
Nombre legal completo (Imprenta) (Full Legal Name (Print))

## **FORMULARIO DE CONSENTIMIENTO DE UNIÓN**

1.      Doy mi consentimiento para ser parte demandante en una demanda contra UNION MARKET, MPM ENTERRISES y / o entidades e individuos relacionados con el fin de obtener reparación por violaciones de la Fair Labor Standards Act, (*Ley de las Normas Laborales Justas*) de conformidad con 29 USC § 216(b).

2.      Al firmar y devolver este formulario de consentimiento, yo designo Fitapelli & Schaffer, LLP ("La Firma") para representarme y hacer decisiones en mi defensa acerca del caso y cualquier acuerdo extrajudicial. Entiendo que costos razonables hechos en mi defensa serán deducido de cualquier acuerdo extrajudicial o juicio será prorrateado entre todos los otros demandantes. Entiendo que la firma peticionara con la Corte para conseguir los costos de abogado de cualquier acuerdo extrajudicial o juicio en la suma que será el mayor de lo siguiente: (1) la suma "lodestar", que es calculada por multiplicar una tarifa por hora razonable por los números de horas dedicado a la demanda, o (2) 1/3 del total bruto del acuerdo judicial o juicio. Estoy de acuerdo de ser vinculado a cualquier proceso legal de este asunto por la Corte, sea favorable o desfavorable.


_____
Firma (Signature)


_____
Nombre legal completo (Imprenta) (Full Legal Name (Print))

## FORMULARIO DE CONSENTIMIENTO DE UNIÓN

1.      Doy mi consentimiento para ser parte demandante en una demanda contra UNION MARKET, MPM ENTERRISES y / o entidades e individuos relacionados con el fin de obtener reparación por violaciones de la Fair Labor Standards Act, (*Ley de las Normas Laborales Justas*) de conformidad con 29 USC § 216(b).

2.      Al firmar y devolver este formulario de consentimiento, yo designo Fitapelli & Schaffer, LLP ("La Firma") para representarme y hacer decisiones en mi defensa acerca del caso y cualquier acuerdo extrajudicial. Entiendo que costos razonables hechos en mi defensa serán deducido de cualquier acuerdo extrajudicial o juicio será prorrateado entre todos los otros demandantes. Entiendo que la firma peticionara con la Corte para conseguir los costos de abogado de cualquier acuerdo extrajudicial o juicio en la suma que será el mayor de lo siguiente: (1) la suma "lodestar", que es calculada por multiplicar una tarifa por hora razonable por los números de horas dedicado a la demanda, o (2) 1/3 del total bruto del acuerdo judicial o juicio. Estoy de acuerdo de ser vinculado a cualquier proceso legal de este asunto por la Corte, sea favorable o desfavorable.


_____
Firma (Signature)


_____
Nombre legal completo (Imprenta) (Full Legal Name (Print))